**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2016 JUN 14  P 5: 13

CLERK'S OFFICE
AT GREENBELT

BY_____DEPUTY

| | | |
|---|---|---|
| **EDGAR A. MELENDEZ**, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No.: PJM 14-2247 |
| | * | |
| **DECLERCQ, INC.**, *d/b/a* **Community** | * | |
| **Landscape Services**, *et al.*, | * | |
| | * | |
| Defendants | * | |

**MEMORANDUM OPINION**

Edgar A. Melendez has sued Declercq, Inc. d/b/a Community Landscaping Services and

William DeWitt (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act

("FLSA"), 29 U.S.C. §§ 206, 207. Melendez and Defendants have now reached a settlement, and

they ask for the Court to approve the settlement and dismiss with prejudice all claims in the

Complaint and Amended Complaint. For the reasons that follow, the Court **GRANTS** the Joint

Motion for Settlement (ECF No. 37) and **DISMISSES WITH PREJUDICE** all claims in the

Complaint (ECF No. 1) and Amended Complaint (ECF No. 19) as to both Defendants.

I.

Factual and Procedural Background

Defendant Declercq, Inc. (hereinafter Community Landscaping Services, or "CLS") is a

landscape management company with its principal place of business in Virginia. CLS's grounds

management and landscaping services include, among other things, grounds maintenance,

seasonal flower rotations, irrigation maintenance, and tree care. Defendant DeWitt is the owner

and President of CLS.

1

Melendez was employed as a landscape crew supervisor for CLS on several sites in both Virginia and Maryland from approximately 1995 until his discharge by the company on February 7, 2014. During his employment with CLS, Melendez was assigned to supervise one of the landscape management company's largest projects: the Ashburn Village Development in Northern Virginia. Throughout the period at issue in the Amended Complaint, Melendez was paid a salary of more than $900 per week.

After his discharge from CLS, Melendez sued CLS and DeWitt. In his Complaint, filed on July 15, 2014, Melendez claimed that Defendants failed to pay him minimum wages for all of the hours he worked and failed to pay him overtime premiums for hours worked in excess of 40 hours per week. ECF No. 1. On the basis of these contentions, Melendez alleged one claim for unpaid minimum wages and overtime wages under the FLSA and two similar claims under the Maryland Wage and Hour Law (MWHL) and Maryland Wage Payment and Collection Law (MWPCL). *Id.*

On November 10, 2014, Defendants moved to dismiss Melendez's Maryland law claims and his allegation that Defendants willfully violated the FLSA. ECF No. 7. The Court granted Defendants' Motion to Dismiss without prejudice with respect to the MWHL and MWPCL claims, but denied the Motion as to Melendez's allegation that Defendants willfully violated the FLSA. ECF No. 18. Melendez thereafter filed an Amended Complaint on March 16, 2015, dropping his MWHL and MWPCL claims and proceeding only on his FLSA minimum wage and overtime pay claims. ECF No. 19. Defendants answered the Amended Complaint on March 26, 2015, denying any liability on Melendez's overtime claim and also notably asserting a defense that Melendez was not entitled to overtime pay pursuant to the FLSA's "Executive Exemption." ECF No. 20.

2

The parties subsequently conducted discovery. Defendants took Melendez's deposition and obtained other sworn testimony and admissions through written discovery requests. On the basis of the information obtained, Defendants filed a Motion for Summary Judgment on all claims. ECF No. 26. Defendants established (1) that Melendez had received more than the federally mandated minimum wage for the hours he claimed to have worked during the period at issue, and (2) that they did not "willfully" violate the FLSA and, accordingly, that a two-year statute of limitations applied.[1] ECF No. 26-1. Melendez conceded both points in his Opposition to the Motion for Summary Judgment.[2] ECF No. 30.

Defendants also asserted that the FLSA's Executive Exemption applied to Melendez's employment.[3] ECF No. 26-1. In response, Melendez contested that the Executive Exemption applied, but further conceded that Defendants had established at least two of the four elements of the test for application of the Executive Exemption: (1) that Melendez was paid a weekly salary of at least $455.00 which was not subject to reductions based on the number of hours worked (the "salary basis" test), and (2) that Melendez customarily and regularly directed the work of two or more full-time employees or their equivalent. ECF No. 26-1. The only two issues with respect to Defendants' Motion for Summary Judgment that were not conceded by Melendez

---

[1] The FLSA provides two limitations periods. The limitations period that is generally applicable to claims under the FLSA is two years. 29 U.S.C. § 255(a). However, where a defendant willfully violates the FLSA, the limitations period is extended to three years. *Id.*

[2] In conceding these points, Melendez not only abandoned his FLSA minimum wage claims, but also agreed with Defendants that he could not recover under the FLSA for overtime hours worked prior to July 15, 2012 (two years before the filing of the original Complaint).

[3] Under U.S. Department of Labor regulations, to qualify for the exemption, an employee must: (a) be paid on a salary basis, in an amount of not less than $455.00 per week; (b) have the primary duty of management of the enterprise or a recognized subdivision of the employer's enterprise; (c) regularly direct the work of two or more other full-time employees or their equivalent; and (d) have the authority to hire or fire other employees or make suggestions and recommendations as to the hiring, firing, advancement, promotion, or any other change of status of other employees that are given particular weight by the company. 29 C.F.R. § 541.100.

where whether he: (1) had management as his primary duty, and (2) had the authority to hire and fire workers. *Id.*

On February 17, 2016, the parties argued their respective positions before the Court. ECF No. 34. The Court granted summary judgment in favor of Defendants and against Melendez with respect to all unpaid FLSA minimum wage claims and all unpaid overtime FLSA claims for hours worked before July 15, 2012. The Court then denied summary judgment with respect to Melendez's FLSA unpaid overtime claims on or after July 15, 2012, but stated the following concerning Defendants' Executive Exemption defense:

> *This is a case where the defendants have put on a very, very strong case to suggest that the executive exemption should apply*, and the Court, while it could grant summary judgment at this point, is somewhat loathe to for the following reason, even though there's case law that would probably support it. . . .
>
> If this matter goes to trial on the single issue of whether the plaintiff Melendez had primary management responsibility or authority to hire and fire or recommending hiring and firing, *there is a strong likelihood that the jury would agree with the defendants anyway and this would moot out any question on appeal.* . . .
>
> My view of the case is that if this case tries on this single issue [whether Melendez's primary duty was management and whether he had the authority to hire and fire employees (or make recommendations regarding such decisions that were entitled to particular weight)], *the high probability is defendants will prevail*.

Tr. Hr'g on Mot. Summ. J. at 41-21, ECF No. 36 (emphasis added).

Following the February 17, 2016 Motion Hearing, counsel for all parties conferred regarding a potential settlement. After discussions among counsel and their clients, the parties ultimately agreed to resolve any and all of their disputes. On June 3, 2016, the parties filed a Joint Motion for Settlement. ECF No. 37. In the parties' proposed Settlement Agreement, they agree to dismiss the lawsuit with prejudice, with each party to bear its own fees and costs. They also agree to release all claims against each other arising out of Melendez's wages and payment

while at CLS and all claims arising out of the filing of the litigation (including claims for attorney's fees). ECF No. 37-1.

## II.

### Standard of Review

Congress enacted the FLSA to protect workers from the poor wages and long hours that may result from significant inequalities in bargaining power between employers and employees. To that end, the statute's provisions are mandatory and generally not subject to bargaining, waiver, or modification by contract or settlement. *See Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945). Court-approved settlement is an exception to that rule, "provided that the settlement reflects a 'reasonable compromise of disputed issues' rather than 'a mere waiver of statutory rights brought about by an employer's overreaching.'" *Saman v. LBDP, Inc.*, 2013 WL 2949047, at *2 (D. Md. June 13, 2013) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)).

In reviewing FLSA settlements for approval, "district courts in this circuit typically employ the considerations set forth by the Eleventh Circuit in *Lynn's Food Stores*." *Saman*, 2013 WL 2949047, at *3 (citing *Hoffman v. First Student, Inc.*, 2010 WL 1176641, at *2 (D. Md. Mar. 23, 2010); *Lopez v. NTI, LLC*, 748 F. Supp. 2d 471, 478 (D. Md. 2010)). The settlement must "reflect[] a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Id.* The court considers (1) whether there are FLSA issues actually in dispute, (2) the fairness and reasonableness of the settlement in light of the relevant factors from Rule 23, and (3) the reasonableness of the attorneys' fees, if included in the agreement. *Id.* (citing *Lynn's Food Stores*, 679 F.2d at 1355; *Lomascolo v. Parsons Brinckerhoff, Inc.*, 2009 WL 3094955, at

*10 (E.D. Va. Sept. 28, 2009); *Lane v. Ko-Me, LLC*, 2011 WL 3880427, at *2–3 (D. Md. Aug. 31, 2011)).

## III.

### Bona Fide Dispute

In deciding whether a *bona fide* dispute exists as to a defendant's liability under the FLSA, courts examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement. *See Lomascolo*, 2009 WL 3094955, at *16–17.

The parties stipulate that, after discovery and resolution of the Defendants' Motion for Summary Judgment, there exist two *bona fide* disputes between the parties. First, the parties dispute whether Defendants are liable for failing to pay Melendez unpaid overtime during the period July 15, 2012 to February 7, 2014 (the date of Melendez's discharge from CLS). In his Amended Complaint, Melendez alleged that he was entitled to overtime pay (among other things) under the FLSA. Defendants denied that allegation and claimed that he was exempt from the FLSA's overtime pay requirements pursuant to the FLSA's Executive Exemption.[4] The Court finds that a *bona fide* dispute therefore exists as to Defendants' liability under the FLSA.

Second, the parties dispute what attorneys' fees, if any, each party would bear should Melendez's FLSA claim proceed to trial. Since the Court's ruling on Defendants' Motion for Summary Judgment, Defendants have informed Melendez's counsel that continued pursuit of his claims for overtime compensation – in spite of statements made in his deposition and written discovery answers (which Defendants believe strongly support application of the Executive Exemption) – may support an award of attorney's fees to Defendants at the close of this litigation if the case proceeds to trial. Some authority (albeit outside this jurisdiction) supports awarding

---

[4] As noted in Part I, *infra*, when viewing the evidence in support of Defendants' Motion for Summary Judgment, the Court recognized that Defendants had made a "very, very strong case" for the application of the Executive Exemption.

attorney's fees to a prevailing defendant in an FLSA case when the losing party has acted in "bad faith" or "vexatiously" in pursuing the litigation. *Ellis v. All of My Sons Moving & Storage of Orlando, Inc.*, No. 6:07-cv-2017-ORL-19DAB, 2009 WL 2496626, at 2 (M.D. Fla. Aug. 12, 2009) (quoting *Kreager v. Solomon & Flanagan, P.A.*, 775 F.2d 1541, 1543 (11th Cir. 1985) (internal quotations omitted). Defendants say their claim for attorney's fees would be quite substantial if they prevailed at trial – well in excess of $100,000. Melendez disputes the Defendants' ability to claim attorney's fees and maintains that he has not acted in bad faith or vexatiously. Accordingly, the Court finds that the parties also have a *bona fide* dispute over whether Defendants could claim attorney's fees if they prevailed at trial (which, as already recognized by the Court, is very likely).

## IV.

### Fairness and Reasonableness

If a *bona fide* dispute is found to exist, courts must then evaluate the fairness and reasonableness of the settlement based on the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Saman*, 2013 WL 2949047, at *3 (quoting *Lomascolo*, 2009 WL 3094955, at *10).

Having reviewed the parties' submissions and after considering the relevant factors enumerated by the *Lomascolo* court, the Court concludes that the Settlement Agreement is a fair and reasonable compromise of the parties' *bona fide* disputes.

With respect to the first *Lomascolo* factor, the extent of discovery, this case is settling at a relatively late stage. The parties have completed discovery, and they have therefore had a

sufficient opportunity to obtain and review evidence, to evaluate their claims and defenses, and to engage in informed arms-length settlement negotiations. *See Saman*, 2013 WL 2949047, at *3. And, as the Court recognized at the hearing on Defendants' Motion for Summary Judgment, a substantial amount of that discovery supported Defendants' arguments for application of the Executive Exemption. The first *Lomascolo* factor therefore supports a finding that the parties' Settlement Agreement is fair and reasonable.

"The second, fourth, fifth and sixth factors [the stage of the proceedings, the experience of counsel who have represented the plaintiffs, the opinions of counsel and the probability of the plaintiff's success on the merits and the amount of settlement in relation to the potential recovery] can be analyzed together." *Duprey v. Scotts Co., LLC*, 30 F. Supp. 3d 404, 409 (D. Md. 2014). As already discussed, the parties' Settlement Agreement was reached after the close of discovery, following argument on Defendants' Motion for Summary Judgment. Throughout this litigation, both parties were represented by experienced and competent counsel of their choice. The parties' respective attorneys have represented that the Settlement constitutes a fair and reasonable resolution of their disputes, especially in light of the Court's own observation that there is a "high probability" that Melendez is an Exempt Executive under the FLSA. Even if the Executive Exemption were later found not to apply, the parties also stipulate that Melendez's own records of his hours worked indicate that any potential recovery by Melendez would be minimal.

The Court also recognizes that, while the parties dispute whether Defendants would be able to seek attorney's fees at the close of the case (should they prevail), there is no dispute that each of the parties have already incurred a substantial amount of fees litigating this case. Were Defendants to successfully move for attorney's fees, Melendez could face significant liability.

Accordingly, the stage of the proceedings, the experience of counsel for both parties, and the parties' assessment of their potential recovery and exposure to further liability weigh in favor of finding that the Settlement Agreement is fair and reasonable.

The fourth factor of the *Lomascolo* analysis requires the Court to ensure that the Settlement Agreement has not been induced by fraud or collusion. When all parties are represented by counsel of their choice in connection with the negotiations that led to the Settlement, there is a presumption that the Settlement was not the product of fraud or collusion. *See Lomascolo*, 2009 WL 3094955, at \*12. Here, the Court finds no fraud or collusion in the proposed Settlement Agreement, given the experience of Melendez's counsel, the endorsement of the settlement by counsel for both parties, and the quality of the filings submitted to date.

## V.

### Attorney's Fees

The proposed Settlement does not contain an award for attorney's fees.

## VI.

### Conclusion

For the foregoing reasons, the Court **GRANTS** the Joint Motion for Settlement (ECF No. 37) and **DISMISSES WITH PREJUDICE** the Complaint and Amended Complaint (ECF Nos. 1 and 19). A separate Order will **ISSUE**.

/s/
**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**June        , 2016**

9